[No. 15499.  Department Two.  March 22, 1920.]

GEORGE E. HALLOCK, *Appellant*, v. NATIONAL BANK OF COMMERCE, OF SEATTLE, *Respondent*.[1]

GARNISHMENT (40-1) — ANSWER—VERIFICATION—SUFFICIENCY. A garnishee's answer verified in the usual form sufficiently complies with Rem. Code, § 690, requiring the same to be under oath, in writing and signed.

SAME (40-1)—ANSWER—OBJECTION TO. The sufficiency of an unsworn garnishee's answer can be tested only by motion to strike and not by motion for judgment on the pleadings.

GARNISHMENT (17) — PROPERTY SUBJECT — DEPOSITS IN BANK — MONEY OF PLAINTIFF IN ESCROW. Where a consignee refused to pay a draft for the price of goods, but deposited money to be held in escrow until the balance of the consignment was shipped, and claimed that the escrow agreement was still in force after the delivery of the bill of lading to him, the money on deposit belonged to him, and could not be garnished as the money of the consignor, in the consignee's action for damages for breach of contract.

SAME (17)—ELECTION OF REMEDIES (3)—ACTS CONSTITUTING. In such a case, a suit by the consignee for damages for breach of contract is not an election to relieve the money from the restrictions of the escrow agreement.

SAME (24)—JURISDICTION—NON-RESIDENTS. Jurisdiction of a non-resident garnishee cannot be acquired by the garnishment of a fund in which it was not interested, and a default judgment in such case would be invalid.

Appeal from a judgment of the superior court for King county, Clifford, J., entered June 12, 1919, dismissing garnishment proceedings, after a trial of the issues raised by the garnishee's answer. Affirmed.

*Jones, Riddell & Brackett*, for appellant.

*Kerr & McCord* (*Wm. Z. Kerr*, of counsel), for respondent.

[1]Reported in 188 Pac. 479.

13—110 WASH.

BRIDGES, J.—On May 2, 1918, George E. Hallock, plaintiff and appellant, entered into an agreement with the National Body & Mfg. Company, defendant, whereby the latter agreed to sell, and within fifteen days thereafter, ship, to the former, at Seattle, Washington, a car load of automobile bodies, to be used upon the Ford chassis. The appellant paid the manufacturing company $500 on the purchase price. The National Body & Mfg. Company was a manufacturer of automobile bodies, at Nashville, Tenn., and the appellant was a dealer in automobile bodies at Seattle. The shipment was greatly delayed, for one reason or another, but chiefly because the bill of lading gave a wrong description of the car in which the automobile bodies had been shipped. The car was finally located at Seattle.

At the time of the shipment from Nashville, the defendant drew a draft against the appellant for the balance of the agreed purchase price, in the sum of $2,834.75. This draft was drawn to the Cumberland Valley National Bank, of Nashville, and attached thereto was an order bill of lading. The defendant was a regular customer of the Cumberland Valley National Bank. It took the draft and bill of lading mentioned to that bank, and the latter received the same and at once deposited to the private account of the defendant the full amount of the draft, less a small discount. The deposit slip evidencing this deposit provided as follows:

"If the proceeds in cash of drafts, checks on other banks, or other cash items do not reach this Bank, the credit given for them will be cancelled. This Bank receives drafts, cash items and checks on other banks as a forwarder for collection only upon the above conditions, to which the Depositor hereby agrees."

The Cumberland Valley National Bank then forwarded the draft, with bill of lading attached, to its correspondent, the respondent herein, for collection. Respondent notified appellant of the draft and bill of lading. When the car arrived, the appellant learned that only a part of the bodies and equipment which he had ordered was therein, and so notified the respondent. Appellant refused to pay the draft or take up the bill of lading. After some correspondence, however, between the appellant and defendant, the latter agreed to ship at once the remainder of the equipment. After getting this assurance, appellant entered into an oral agreement with the respondent to the effect that, while he would not honor the draft, he would pay to respondent the amount of the draft, providing the bill of lading was given to him, which money should be held by respondent in escrow until the remainder of the automobile bodies and equipment should arrive. At that time, both the appellant and the respondent understood that the remainder of the equipment would arrive in Seattle within a few days. It further appears from the testimony that the Cumberland Valley National Bank knew of this agreement and consented thereto. This agreement was carried out by appellant's giving his check to respondent for the amount of the draft, and receiving from the latter the bill of lading. Later some additional portions of appellant's order arrived, but many parts were still missing. He continued to wait for the arrival of these missing parts until in November, 1918, when he brought suit in King county against the body company for damages for breach of contract.

At the time of the commencement of this suit, the appellant sued out a writ of garnishment against the respondent. In due time, the respondent answered the writ to the effect that it was not indebted to appellant and did not have in its possession or under its control

any property belonging to appellant. It further answered that, prior thereto, the Cumberland Valley National Bank had sent to it a draft and bill of lading as heretofore described. Its answer further alleged the escrow agreement hereinbefore mentioned. The appellant in his testimony claimed that the money which he had paid to the respondent was his money by virtue of the escrow agreement. At the conclusion of appellant's case, the respondent moved for judgment, which was denied.

The defendant's testimony shows that the Cumberland Valley National Bank, when it took the draft in question, reserved the right, according to custom, to charge back to the defendant the amount which it had advanced in the event the draft was not paid. It further appears that the Tennessee bank honored checks drawn by the body company to the extent that, at the time it learned of the Seattle trouble, the body company did not have any money on deposit with it, nor did it have any on deposit thereafter, and that, at about that time, it was thrown into bankruptcy. At the close of the case, the court made and entered its judgment dismissing the garnishment proceedings. From this judgment, this appeal is taken.

Before the taking of any testimony, the appellant moved the court for judgment against respondent for the reason that respondent's answer to the writ of garnishment was not sworn to as provided by § 690, Rem. Code, which requires that "the answer of the garnishee shall be under oath, in writing, and signed by him. . . ." The answer is verified in the usual form of verification of complaints and answers, and we think it sufficiently complies with the statute. *Frieze v. Powell*, 79 Wash. 483, 140 Pac. 690. In any event, the appellant would not have been entitled to the judgment on the pleading if the answer had neither

been sworn to nor verified. If the appellant was not satisfied with the answer, it was his privilege to move to strike it. Only in that manner could its sufficiency be tested.

On the merits, we think the appellant has mistaken his remedy, if he has any. All of his testimony was to the effect that he had deposited the money with the respondent with the understanding and agreement that it was to be used in paying the draft only after the remainder of the ordered equipment had arrived; till that time the money was to remain his, and till that time was not to be paid out on any account. The respondent's testimony failed to show any contrary agreement. Manifestly, appellant could not garnish his own money. It is true his affidavit for the writ of garnishment was on the assumption that the money belonged to the body company. But his testimony was directly to the contrary. We must decide the case on the testimony and not on the pleadings. If he was entitled to have the money and the respondent would not pay it to him, his remedy was by the usual suit for money had and received, wherein he would probably have to account for the equipment he had received or its value. It was on this theory that respondent based its motion for nonsuit.

But it is argued that, by the suit for damages against the body company and the issuance of the garnishment, the appellant elected to relieve the money from the restrictions of the escrow agreement and to consider it as having paid the draft. But this theory is not sound, because the testimony conclusively shows that it was appellant's contention that the money was his, and that the escrow agreement was still in full force and effect. Besides this, under the testimony, the appellant never got jurisdiction of the body company, by virtue of the attempted garnishment, for the reason

that in no event did the escrow money belong to the body company nor did it have any interest in it. Appellant could get jurisdiction of the body company by means of the garnishment only in the event that company had an interest in the escrow money. If the money had been used to pay the draft, the body company would not have had any interest therein. Under those circumstances, the Cumberland Valley National Bank would have been the interested party. Such a state of facts would have brought this case squarely within the doctrine of the case of *Old National Bank v. Gibson*, 105 Wash. 578, 179 Pac. 117.

It is unnecessary, and inasmuch as further litigation may result, it would be improper, for us to further discuss the case on the prospective rights of the parties. We simply decide that, under the testimony here, the appellant's writ of garnishment held nothing. The judgment is affirmed.

HOLCOMB, C. J., TOLMAN, FULLERTON, and MOUNT, JJ., concur.