[No. 18528.  *En Banc.*  January 10, 1925.]

AMERICAN NATIONAL BANK OF NASHVILLE, *Appellant,* v. NATIONAL BANK OF COMMERCE OF SEATTLE, *Respondent.*[1]

ELECTION OF REMEDIES (5)—ACTS CONSTITUTING—WANT OF JURISDICTION AND INEFFECTIVENESS OF REMEDY. There is no election of remedies by a former suit which plaintiff was compelled to abandon because of failure to obtain jurisdiction over the person of the defendant or any of its property.

SALES (81)—PERFORMANCE OF CONTRACT—PARTIAL DELIVERY AND ACCEPTANCE. One who accepts a portion of the goods contracted for and shipped does not thereby become liable for the balance that were never delivered, nor does he relegate himself only to an action for damages against the seller, but may recover the amount of an escrow deposit made by him to cover the purchase price.

JUDGMENT (198) — PARTIES CONCLUDED — PERSONS PROMOTING OR PARTICIPATING IN DEFENSE. One participating in an action in which defenses were made on his behalf, and directly interested in the result, is concluded by the judgment.

TOLMAN, MITCHELL, and HOLCOMB, JJ., dissent.

Appeal from a judgment of the superior court for King county, Smith, J., entered October 5, 1923, upon findings in favor of the defendant, in an action on contract, tried to the court. Reversed.

*Chadwick, McMicken, Ramsey & Rupp* and *Stephen F. Chadwick,* for appellant.

*J. Speed Smith* and *Henry Elliott, Jr.,* for respondent.

MACKINTOSH, J.—It is unnecessary to repeat much of the history of this transaction. It may be found in *Hallock v. National Bank of Commerce,* 110 Wash. 385, 188 Pac. 479, 10 A. L. R. 737. So far as material to the decision of this case, the situation is that the Na-

[1]Reported in 232 Pac. 295.

tional Body Manufacturing Company, of Nashville, Tennessee, agreed to sell to Hallock, at Seattle, a shipment of auto bodies. The seller (which we will call the body company) drew a draft in the sum of $2,831.40, the amount of the contract price, upon Hallock, and sold the draft to the Cumberland Valley Bank, of which the appellant is successor by consolidation. The draft was forwarded by the appellant to the respondent in Seattle, with an order bill of lading endorsed in blank, covering a shipment of auto bodies from the body company to Hallock. The draft and bill of lading were forwarded to respondent for purposes of collection from Hallock. Upon delivery to him of the bill of lading, respondent was to remit the proceeds of the draft to the appellant. When the appellant took the draft, it was a holder in due course, but as was stated in the *Hallock* case (*Hallock v. National Bank of Commerce, supra*), the complication thereafter arose in the transaction by virtue of an escrow agreement to which the appellant became a party for the benefit of Hallock. By virtue of that agreement, the appellant changed its situation from a holder in due course, and permitted the introduction of defenses by the drawee and the case was no longer one falling within the facts of *Old National Bank v. Gibson,* 105 Wash. 578, 179 Pac. 117, 6 A. L. R. 247.

Upon receipt by the respondent of the draft and bill of lading, they were presented to Hallock, who refused to pay the draft, for the reason that the goods covered by the bill of lading had not yet arrived. The appellant, upon being notified of this, instructed the respondent to hold the draft pending the arrival of the goods. Thereafter Hallock notified respondent that part of the goods had arrived. Appellant was notified that Hallock agreed to take up the draft as soon as all the goods arrived in Seattle. Thereupon appellant in-

structed the respondent to deliver the bill of lading, accept the amount of the draft and to hold the funds in escrow pending the arrival of all the goods. Pursuant to these instructions, the respondent delivered the bill of lading to Hallock, who paid the entire amount of the draft, which was placed in escrow to await the arrival of all the goods. As a matter of fact, the goods covered by the bill of lading were only a portion of the goods ordered for which the draft was drawn. Hallock informed respondent, after securing the goods covered by the bill of lading, that some of them were in a damaged condition.

The body company had, in the meantime, become insolvent and was unable to ship all the goods, and the freight on the goods shipped had not been paid by the body company, as it had agreed to; and, were the body company still in existence and suable, Hallock would have a cause of action against it for its failure to comply with its contract of sale. After the portion of the goods covered by the bill of lading had arrived, a small additional shipment by express was made which Hallock and the respondent, at the time they were notified of the shipment, presumed was the entire balance called for by the contract. Through a misunderstanding, the appellant was notified by the respondent that all of the goods had arrived, taking it that the express shipment constituted the balance of the goods due; but, as soon as the true situation was discovered, the respondent telegraphed the appellant the true situation.

Hallock began an action (*Hallock v. National Bank of Commerce, supra*) against the body company for damages for breach of the contract and attempted to make service by garnishment and attachment of the funds in the hands of the respondent. In that action, we held that the funds were either the funds of Hallock

or of the appellant and were not subject to garnishment and attachment, so that Hallock had not obtained jurisdiction of the body company. This action was brought by the appellant to recover the full amount of the draft deposited in escrow with the respondent, asserting that the escrow agreement had been fully complied with and that, by the acceptance and retention of the goods by Hallock and by his payment of the storage charges thereon and by reason of the making of the claim for damages against the body company, the appellant was entitled to the payment of the full sum held in escrow.

The evidence shows that, while the contract called for the delivery of goods worth $2,831.40, only goods amounting to the value of probably $1,800.00 were ever delivered to Hallock. The only goods ever received by him were covered by the bill of lading and the subsequent small express shipment. He had taken these and disposed of them at the time of the trial, and testified that he had never held them as the property of the body company, but had taken them under the contract. The trial court held that the escrow agreement had never been complied with and could not be complied with, and the respondent had no authority and could not be compelled to deliver the amount held by it to the appellant, and entered judgment for the respondent, from which this appeal is taken.

We cannot agree with the contention of the appellant that the entire amount was to be paid over to it when the additional goods received by express arrived; nor can we agree with the contention that Hallock is now claiming both the property and the money for its payment; nor can we agree with the appellant's contention that Hallock is estopped to deny the goods had arrived, because he had notified respondent of the ar-

rival of the express shipment, which at the time he supposed covered the balance of goods due him.

Nor is Hallock estopped to claim that some of the money belongs to him, because of the institution of his action against the body company, on the theory that the money was that of the appellant and subject to garnishment. In his action in 110 Wash. it was not held that Hallock was mistaken in his cause of action. What was held was that he was mistaken in the matter of jurisdiction, because he did not have the right to garnish the funds in question, because they were either his own or those of appellant here. Of course, having failed to obtain jurisdiction of the person of the defendant or of any of its property, he was compelled to abandon his suit; and having failed to obtain jurisdiction, he ought not to be held to have elected his remedy by instituting that action, which was unavailing because of inability to obtain jurisdiction. Such action should not preclude him from setting up what defenses he may have in establishing any claim he may have against any portion of the funds in the hands of respondent. Although it may be true that, by taking possession of such auto bodies as were received, Hallock can be held to have stood upon his contract with the body company; still he cannot be held to a payment for any more of the goods than he actually received. He deposited the amount of the draft in escrow with the respondent for the purposes already detailed, and that amount was to be retained until the goods should all arrive. This arrangement was satisfactory to the appellant. The draft became cancelled thereby, and no relationship was created between Hallock and appellant whereby Hallock's money would be paid to appellant for goods not received. He should pay for those received, but there is no reason why he should pay for the goods that were never sent. He did not,

because of the acceptance of a portion of the goods, become liable for the portion never shipped. That was not his agreement with the appellant and is not one which can be enforced by the law, under the facts. By his action in receiving part of the goods, he did not relegate himself only to an action of damages against the body company; and even though he might be held to have done so, in such a suit he would only be compelled to pay the value of the goods which he actually received, and in this action he should be compelled to do the same and no more. The defenses made by the respondent were made on behalf of Hallock; he was directly interested in the result of the action and he is as fully concluded by a judgment which may be entered in this case as is either appellant or respondent. *Murne v. Schwabacher Hardware Co.,* 2 Wash. Terr. 191, 3 Pac. 270; *Douthitt v. MacCulsky,* 11 Wash. 601, 40 Pac. 186; *Shoemake v. Finlayson,* 22 Wash. 12, 60 Pac. 50; *Bronx Inv. Co. v. National Bank of Commerce,* 47 Wash. 566, 92 Pac. 380.

The judgment is reversed, and the cause remanded for a new trial for the determination of the amount of the escrow deposit to which appellant is entitled, and the amount which should be returned to Hallock.

MAIN, C. J., BRIDGES, FULLERTON, PARKER, and PEMBERTON, JJ., concur.

TOLMAN, J. (dissenting)—I cannot see the facts to be as found by the majority. As I read the record, the escrow agreement between appellant and Hallock was based upon the mutual assumption that all of the goods had been shipped, and that, when the express shipment should arrive in Seattle, the conditions of the escrow agreement would be fully met. The words "all of the goods" stressed by the majority, mean all of the goods covered by both freight and ex-

press shipments, and the correspondence does not justify any other or broader construction. To my mind it is inconceivable that appellant, being a holder of the draft in due course, would have consented to waive or defer its rights as such holder until the body company should make up and ship goods which perhaps were then not even in existence. Nothing in the communications which passed indicates that Hallock asked or expected it to do so. If this view be correct, then the escrow agreement was fully performed on the part of the appellant when the express shipment arrived in Seattle, and it should recover the fund involved, less only the freight charges.

MITCHELL, J., concurs with TOLMAN, J.

HOLCOMB, J. (dissenting)—While I have more reasons upon the facts than are stated in Judge Tolman's dissent, I agree generally also with him.