[No. 25784. *En Banc.* May 19, 1936.]

ARCHIE W. HINTON, *as Administrator, Appellant,* v. EARL A. CARMODY, JR., *et al., Defendants,* ASSOCIATED INDEMNITY CORPORATION, *Respondent.*[1]

*John J. Kennett* and *Graham K. Betts,* for appellant.

*N. A. Pearson* and *Floyd M. Reischling,* for respondent.

BEALS, J.—This appeal is part of the aftermath of our decision in the case of *Hinton v. Carmody,* 182 Wash. 123, 45 P. (2d) 32. In that case, a judgment rendered upon the verdict of a jury in favor of the plaintiff against the defendants Carmody was affirmed. For a statement of the facts concerning the accident, reference is made to the opinion referred to.

After the going down of the remittitur carrying the affirmance of the judgment, the plaintiff, following the prescribed procedure, caused a writ of garnishment to be served upon Associated Indemnity Corporation, a corporation, which had issued a policy of public liability insurance covering the automobile which was being driven by defendants Carmody at the time of the accident which resulted in Mrs. Hinton's death. This fact was set forth by plaintiff in the affidavit filed for the issuance of the writ of garnishment, plaintiff also alleging that the automobile was, at the time of the accident, in the possession of the Carmodys with the express permission of its owner, and that the Carmodys were then additional insureds under the policy. The garnishee defendant answered, denying any liability to plaintiff, and the trial of the action to the court resulted in findings of fact and conclusions of law in favor of the garnishee, followed by a judgment dismissing the garnishment, from which judgment the plaintiff has appealed.

The following portions of the insurance policy written by respondent are material to this inquiry:

"RISKS NOT COVERED—. . . This policy shall be null and void as respects Items 3 and/or 4 and/or

if the interest of the insured in the property be other than unconditional and sole ownership, or if the subject of the insurance be or become encumbered by any lien or mortgage, except as stated in the declarations or otherwise endorsed thereon.

. . . . . . . . . .

"INSURED DEFINED—The unqualified term 'insured' wherever used in this policy, shall include in each instance every person entitled to protection hereunder, but the qualified term 'named insured' shall apply only to the person, firm or corporation named and described as such herein.

"ADDITIONAL INSURED—Except as to any risk not covered by this policy, the terms and conditions of the insurance as respects Items 1 and/or 2 of this policy are so extended as to be available in the same manner and under the same conditions as they are available to the named insured, to any person, firm or corporation, hereby styled Additional Insured, while riding in or legally operating any of the automobiles covered hereunder for the purposes stated in the declarations, and to any person, firm or corporation legally responsible for such operation thereof, provided such use or operation is with the permission of the named insured, or, if the named insured is an individual, with the permission of an adult member of the insured's household other than a chauffeur or a domestic servant; except that the terms and conditions of this policy shall not be available to a public automobile garage, automobile repair shop, automobile sales agency, automobile service station, or the proprietors, agents or employees thereof.

. . . . . . . . . .

"Named Insured PAUL C. KAUFFMAN &/or NORTH-WEST INSTRUMENT CO."

The court, after reciting the former judgment, made, *inter alia,* the following findings of fact:

"The automobile was purchased by the minor R. P. Kauffman with his own money; that the father P. C. Kauffman took out a policy of public liability insurance, with garnishee defendant Associated Indemnity Corporation, covering the automobile in question, in

which policy the father P. C. Kauffman and the Northwest Instrument Company were the named assured; the automobile was loaned by R. P. Kauffman, a minor, without permission of P. C. Kauffman, to defendants Earl A. Carmody, Jr., and Earl A. Carmody, Sr., who were using said automobile at the time of the accident; neither of the Kauffmans were riding in the automobile at the time of the accident; that the use of said automobile was entirely on the business of Earl A. Carmody, Sr., and Earl A. Carmody, Jr., and not being used in the business of or on account of said Kauffmans in any way or manner.

"That R. P. Kauffman was a minor, being under the age of twenty-one (21) years at the time of the accident.

"That the plaintiff was unable to obtain any payments on said judgment from the defendants Earl A. Carmody, Jr., or Earl A. Carmody, Sr., the defendants against whom said judgment was obtained; that writ of garnishment was issued against the Associated Indemnity Corporation, a corporation, being the corporation that issued said liability policy of insurance.

"That said insurance policy extends its protection to additional parties operating the automobile with the permission of the named assured or with the permission of an adult member of the assured's household other than a chauffeur or a domestic servant.

"That no such permission, either express or implied, was given by P. C. Kauffman or the Northwest Instrument Company, and the minor son, R. P. Kauffman, not being an adult, his permission to said Carmodys for the use of the automobile would not be binding upon the named assured, and therefore the defendants Carmody against whom the jury returned a verdict did not become assureds under the terms of said policy, and were not covered under said policy."

At the time of the accident, Robert P. Kauffman, the owner of the car, was twenty years and nine months old. His father, P. C. Kauffman, was the principal owner of Northwest Instrument Company, and young Kauffman sometimes used his car in con-

nection with the business of the company and occasionally on errands for his father. It was for this reason that P. C. Kauffman took out and paid for the insurance policy in question. It appears that the father had signed the conditional bill of sale of the car, for the reason that his son was under twenty-one years of age, and it cannot be questioned but what the father and the company had an insurable interest in the car under Rem. Rev. Stat., § 7033 [P. C. § 2909], which reads:

" 'Insurable interest' is every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured. . . ."

Appellant argues that Robert was an adult, but we cannot agree with this contention. Rem. Rev. Stat., § 10548 [P. C. § 580], reads as follows:

"All persons shall be deemed and taken to be of age for all purposes at the age of twenty-one years and upwards."

Under the statute and the authorities, a person who has not reached the age of twenty-one years is a minor. *State v. Navone*, 180 Wash. 121, 39 P. (2d) 384; *Lucas v. United States Fidelity & Guaranty Co.*, 113 N. J. L. 491, 174 Atl. 712; 1 C. J. 1403.

The policy here in question is a liability, and not an indemnity, policy. *Fenton v. Poston*, 114 Wash. 217, 195 Pac. 31; *Landaker v. Anderson*, 145 Wash. 660, 261 Pac. 388; *Johnson v. McGilchrist*, 174 Wash. 178, 24 P. (2d) 607; *Gooschin v. Mercer Casualty Co.*, 178 Wash. 114, 34 P. (2d) 435. Under these cases, a judgment against the insured is a liability imposed by law, which, under the policy, the insurer is bound to pay, and, to support a writ of garnishment, the garnishee must be obligated to the principal debtor.

Under a liability policy, the obligation to pay

arises as soon as liability against the insured is established, and any obligation within the coverage of the policy may be reached by a writ of garnishment.

This doctrine is, of course, subject to the rule laid down in the case of *Eakle v. Hayes,* 185 Wash. 520, 55 P. (2d) 1072, in which we held that "the rights of a garnishing creditor are no greater than those of the debtor, and, if the debtor cannot recover against the garnishee, then the garnishing creditor cannot."

█ The trial court correctly found from the evidence that the automobile was, on the day in question, loaned by Robert Kauffman to the Carmodys without the consent, express or implied, of either his father, P. C. Kauffman, or Northwest Instrument Company, the named insureds. As Robert was then a minor, and as it does not appear that any adult member of the insured's household, within the terms of the policy, gave permission to the Carmodys to use the car, the Carmodys are without the protection of the policy, unless for some reason it should be held that special circumstances bring them within its terms.

Robert P. Kauffman, the owner of the car, was named as a defendant in this action, but was released from liability by the verdict of the jury, which was returned against the Carmodys alone, judgment having been entered in accordance therewith. Appellant argues that, at the time of the accident, the Carmodys were driving the car with the implied permission of P. C. Kauffman, a named insured. We have carefully read the evidence in this connection, and are clearly of the opinion that appellant's contention is not supported by the record. We find nothing which would justify holding that the car was driven with the implied consent of either P. C. Kauffman or the Northwest Instrument Company. The car belonged to Robert, who was not named as an insured in the pol-

icy here in question, and it cannot be held that his act in loaning the car to the Carmodys constituted them additional insureds under the policy protecting P. C. Kauffman and the company.

Appellant contends that Robert was, in legal effect, a named insured under the policy, but the contract of insurance cannot be so extended. He was not a named insured, and in so far as appellant is concerned, the terms of the policy cannot be enlarged for appellant's benefit in the manner suggested.

Appellant next contends that respondent is estopped by its conduct from denying liability to appellant. The summons and complaint in the action were served upon Robert Kauffman April 6, 1933, and shortly thereafter respondent advised its Seattle agent, one Morrissey, to discuss the matter with Mr. Hinton. Negotiations between Morrissey and appellant or his counsel were continued over a period of several months, but no settlement was ever reached. Late in April and early in May, respondent took from the Carmodys and Kauffman non-waiver agreements providing that the acts of the insurer in investigating the facts surrounding the accident should not waive or invalidate any condition of the policy or right of the insurer thereunder. Appellant complains of the fact that neither he nor his counsel were ever advised of the fact that respondent was conducting the defense of the action under non-waiver agreements. Appellant argues that, as the jury did not return a verdict against Robert P. Kauffman, respondent was under no obligation to prosecute any appeal from the judgment against the Carmodys.

We fail to see how respondent's conduct in defending the action and prosecuting an appeal to this court misled and deceived appellant, as he contends, to his damage and prejudice. We cannot consider here ques-

tions which might arise between respondent and its insured, but we fail to find anything in respondent's conduct of which appellant may complain or upon which any estoppel against respondent may be predicated.

█ Respondent, of course, is not to be considered as having admitted liability because it endeavored to negotiate a settlement of the case. *Eckhardt v. Harder,* 160 Wash. 207, 294 Pac. 981; 22 C. J. 308. In connection with his contention that respondent should be held estopped to deny liability to him, appellant cites many authorities which would probably be in point in a case between an insured and his insurer, but are not applicable to this question, which has arisen between the insurer and the party injured.

█ No named insured was party defendant to the main action. This proceeding is, in effect, an action against an alleged insurer by the person injured. Such an action may, of course, be waged. The cases and texts relied upon by appellant apply to questions which arise in actions to which a named insured was a party and, generally, in which the liability of some named insured had been fixed by judgment.

Entirely different questions are presented in an action between the person injured and the insurer. Facts which might constitute an estoppel between the insurer and its insured may well be wholly ineffective to accomplish that result in favor of an injured person who has recovered no judgment against anyone named in the policy as insured thereby.

█ Appellant argues that evidence in the record demonstrates that respondent considered the Carmodys as protected by the policy. Whether or not respondent did for a while maintain that view is not material, as it never in law committed itself to that position, nor did, nor refrained from doing, any act

which can operate as an estoppel against it and in appellant's favor.

During the examination of an agent of respondent, the witness produced, at appellant's demand, a file containing certain correspondence between respondent's home office and himself and other of respondent's papers concerning this litigation. The file was submitted to appellant's counsel for examination, and thereafter two letters to the witness and a typed memorandum were offered in evidence by appellant and admitted by the court. Thereafter, appellant offered in evidence the balance of the file, to which offer the trial court sustained an objection interposed by respondent. The court thereafter permitted respondent's agent to withdraw the file from the court.

The record contains considerable discussion concerning the admissibility of the papers, which, as above stated, had been submitted to appellant's counsel for examination. Appellant's counsel stated at some length his object in offering the file as evidence, finally stating:

"There was a direct letter in there, Your Honor may not have seen it, in which they advised Mr. Morrissey to take the matter up with the attorneys in the case, Mr. Pearson and Mr. Potts. That is what I had in mind."

Appellant complains of the permission given by the trial court to respondent's agent, permitting him to withdraw the file from the court record. This action was improper. An exhibit offered and identified should remain part of the file until the case is closed. It does not, however, appear from the record, giving particular consideration to the statements of appellant's counsel in the course of the argument concerning the admissibility of the offered evidence, that the file contained anything which would have supported

appellant's contention or rendered respondent liable in law to appellant. The papers selected by appellant's counsel from the file, and offered and received in evidence, completely fail to substantiate appellant's claim that respondent is liable in this action. The statement of appellant's counsel above quoted contains nothing which indicates that the letter therein mentioned was anywise material.

It was the duty of appellant's counsel to call the trial court's attention to the reasons the file was deemed material and to matters therein which appellant's counsel believed supported his contention that respondent had in some way rendered itself liable by estoppel or otherwise to appellant. This, apparently, appellant's counsel did, and from the record as made it cannot be held that, in failing to make the offered exhibit part of the record, the trial court committed error which requires the reversal of the judgment appealed from and the granting of a new trial.

 Appellant requested certain findings of fact which the trial court refused to make upon the ground that they were immaterial. The entire record in the case is before us, and, as requested by appellant, we have carefully examined the same. In reaching our conclusion, we have considered the entire record, and have not confined the consideration of the case only to the facts as found by the trial court.

 The terms of the policy in question which are here important are plain and simple. No reason exists for holding that the policy should be extended by including therein Robert Kauffman as a named insured. As Robert was under twenty-one years of age, it cannot be held that he was an adult member of P. C. Kauffman's family. The insurer has the right to insist that the risk undertaken shall not be unlawfully enlarged. *Green v. National Casualty Co.,* 87 Wash.

237, 151 Pac. 509; *American Automobile Ins. Co. v. Jones,* 163 Tenn. 605, 45 S. W. (2d) 52; *Indemnity Ins. Co. v. Jordan,* 158 Va. 834, 164 S. E. 539.

The opinion of the supreme court of Nebraska in the case of *Wigington v. Ocean Accident & Guarantee Corp.,* 120 Neb. 162, 231 N. W. 770, is in point in connection with the questions here to be determined.

In using the car, the Carmodys were nowise carrying out the business of either named insured. Their operations were entirely independent and apparently concerned themselves alone.

Appellant relies upon the case of *Finkelberg v. Continental Casualty Co.,* 126 Wash. 543, 219 Pac. 12. In the case cited, it appeared that plaintiff sued an insurance company, claiming that he was entitled to recover against that company, basing his claim upon a judgment which he had procured against one Tanaka, in whose favor the defendant company had issued a policy of insurance. The insurance company defended upon the ground that it had canceled the policy prior to service of the summons and complaint upon the insured. It was held that the trial court erred in dismissing the action upon overruling plaintiff's demurrer to the answer. As it appeared that judgment had been rendered against the insured named in the policy, nothing said in the opinion is controlling in the case at bar.

Appellant also relies upon the case of *Odden v. Union Indemnity Co.,* 156 Wash. 10, 286 Pac. 59, 72 A. L. R. 1363, in which case it appeared that one Grill, the owner of an automobile, in whose favor Union Indemnity Company had written a policy of liability insurance, loaned the car to one Hickey, who in turn permitted one Bullock to use the car for his own pleasure. Bullock, while driving the car negligently, injured the plaintiff Odden, who was riding with him;

whereupon Odden sued Hickey and Bullock, claiming damages on account of the injuries which he had suffered. He recovered judgment against both Hickey and Bullock, and upon the return of an unsatisfied execution issued upon the judgment, sued the surety company which had issued the policy to Grill, claiming that Hickey, against whom he had recovered a judgment, had become an assured under the terms of the policy. From a judgment in Odden's favor, the surety company appealed. The defendant contended that Grill's loan of the automobile to Hickey did not authorize the latter to permit Bullock to use the car for his own pleasure. It appears that the trial court found that:

"Grill turned said automobile over to Hickey to use and operate as his own for business and pleasure and consented to the operation of said automobile by Hickey personally and by others,"

and that:

". . . for two or three months prior to and including the third day of July, 1927, Hickey did personally use and operate said automobile for business and pleasure and allowed and permitted others to use and operate the same for business and pleasure, and that Grill knew of such use and operation and consented thereto."

This court held that the findings were supported by the evidence, and that:

"The loan of the automobile by Grill to Hickey vested in Hickey full power, while the automobile was so in his possession, to use it personally for his own business or pleasure, and full power to permit its use by others for their own business and pleasure, as if he were the owner of the automobile. It follows, we think, that Hickey's permission to Bullock to so use and permit the use of the automobile was, for purposes of our present inquiry, in legal effect the same as if Grill had

himself permitted Bullock to use the automobile for his own pleasure."

Under these circumstances, Odden having recovered judgment against both Hickey and Bullock, this court naturally held that Hickey had become an assured under the terms of the policy, and that the judgment in Odden's favor against the surety company should be affirmed. The facts of the case at bar are quite different, as no judgment was ever rendered against either Kauffman, and the case cited is not controlling.

▮ Appellant assigns error upon the overruling of its motion for a new trial. In support of its motion, there were filed affidavits setting forth facts which it is stated were unknown to appellant or his counsel prior to the decision of the case, and which entitled appellant to a new trial. We find no reason for reversing the ruling of the trial court denying appellant's motion for a new trial, the matter alleged in the affidavits as newly discovered evidence being of doubtful relevance or materiality in connection with the matters to be determined.

Finding no error in the record, the judgment appealed from is affirmed.

BLAKE, MAIN, MITCHELL, TOLMAN, STEINERT, and GERAGHTY, JJ., concur.

HOLCOMB, J. (dissenting)—I dissent. At some time during the negotiations, respondent should have given notice to appellant that it disclaimed liability on a specific ground of non-liability under the policy. To the contrary, as shown in the record by a letter from the general office of the company in San Francisco, on January 8, 1934, to its adjuster Morrissey, it stated:

"Since they have not sued the named insured we consider it unwise to mention the fact to plaintiff's

attorney that a judgment against anyone else is probably uncollectible, because they of course would get wise and join the named insured.''

From this, it is manifest that there was not only no notice, but concealment of the fact on the part of respondent that the car was not borrowed by the Carmodys from one of the named assureds in the policy, as an intended defense.

At the very beginning of a seventy-five page note following the decision in *Malley v. American Indemnity Corp.,* 297 Pa. 216, 146 Atl. 571, 81 A. L. R. 1322, commencing on page 1326, it is stated:

''Stated in broad general terms, a liability insurer by assuming and conducting the defense of an action brought against the assured where with knowledge of facts taking the accident, injury, etc., outside the coverage of the policy,—and without disclaiming liability and giving notice of its reservation of rights,—is thereafter precluded in an action upon the policy from setting up the defense of noncoverage, it is held by the great weight of authority.''

Then follows a long list of cases from many Federal and state courts, some of which I have examined. For instance, in *Tozer v. Ocean Accident & Guarantee Corp.,* 94 Minn. 478, 103 N. W. 509, that court said:

''At that time appellant was furnished all the information with reference to the accident, and, as required by the terms of the policy, three courses of action were open to it: It might have taken the position that there was no right of indemnity, even if respondent was liable; it might have taken charge of the litigation, and conducted it to a termination, for the benefit of respondent, provided he were given to understand that appellant did not consider itself bound by such conduct and liable under the terms of the policy; or appellant might have considered that there was a possible liability of indemnity, and preferred to take charge of the litigation, rather than turn it over to respondent. . . .

"While it may be that the acts of appellant were not such as to constitute a waiver, strictly speaking, yet there was at least an election of positions; and, having pursued a course of action consistent with its liability, such conduct ripened into an equitable estoppel, . . . Appellant comes within the rule that a person is precluded from taking, merely because his interests may change, a position inconsistent with the one previously assumed by him, and to the prejudice of a third person."

To the same effect is *Peterson v. Maloney,* 181 Minn. 437, 232 N. W. 790. (See also cases therein cited.) Cf. *Bowen v. Cote,* 69 F. (2d) 136.

The conclusion is irresistible that respondent waived, or is estopped by, its course of conduct in this case and by not giving notice to the injured party, or the assured, of its real defense in the principal action, later to resort thereto.

The coverage in the bond is to the amount of ten thousand dollars, which of course is not sufficient to cover the amount of the judgment against the principal defendant. Appellant is entitled to that sum, together with interest at the rate of six per cent per annum from June 16, 1934, the date of the judgment in the original action, until paid, and his costs in this proceeding in the trial court and on appeal.

MILLARD, C. J., concurs with HOLCOMB, J.